**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SAFE & SAFETY INC. and SHENZHEN ZHENGMI TECHNOLOGY CO., LTD.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ZHENG GONG,**<br><br>Defendant. | ) | **Case No. 1:26-cv-5655**<br><br>**Honorable Judge Andrea R. Wood** |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION AND, IN THE ALTERNATIVE, TO COMPEL ARBITRATION UNDER RULE 12(B)(3)**

## I. INTRODUCTION

Ms. Gong's motion is supported by her eighty-three-paragraph declaration made on personal knowledge under the penalty of perjury. *See* Dkt. 13-1. Plaintiffs answered with arguments alone, unsupported by any evidence. *See* Dkt. 16. No declaration from Mr. Ziyang BAO, who negotiated the Engagement Letter on behalf of both Plaintiffs; none from Mr. Mingjie WANG, whose signature appears on the Engagement Letter; none from Mr. Shaoyi CHE, Plaintiffs' independent counsel who co-signed the Engagement Letter with them and continued to represent them in the Patent Litigation after Ms. Gong's withdrawal.

That choice is dispositive. Where a Rule 12(b)(1) motion mounts a factual (rather than facial) challenge and the movant proffers evidence, "[t]he presumption of correctness that we accord to a complaint's allegations falls away," and the plaintiff "bears the burden of coming forward with competent proof." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). So too on the alternative motion: a party opposing arbitration must "identify specific evidence in the record demonstrating a material factual dispute for trial." *Tinder v.*

*Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Plaintiffs identified none. Ms. Gong's declaration stands uncontroverted.

## II. ARGUMENT

### A. Complete Diversity Is Absent, and Plaintiffs' Belated Request for Jurisdictional Discovery Should Be Denied.

#### 1. Ms. Gong's Chinese citizenship destroys complete diversity.

Plaintiffs point to Ms. Gong's bar admission, her Chicago office, and her years of AIPLA service. Those facts establish presence and professional activity. None of them establishes United States citizenship, and Plaintiffs identify no authority suggesting otherwise. Ms. Gong's uncontroverted testimony is that she "is a citizen of the People's Republic of China and do[es] not hold any citizenship in, passport issued by, or lawful permanent residency in any other country." Dkt. 13-1 at ¶ 3.

Plaintiffs' only response to Ms. Gong's declaration is to label it "uncorroborated," "self-serving," and "one-sided." Dkt. 16 at pp. 1, 3, 5, 8. The Seventh Circuit has "repeatedly emphasized … that the term 'self-serving' must not be used to denigrate perfectly admissible evidence." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). Nearly all testimony a party offers are self-serving; that is why parties testify. A declaration made on personal knowledge under the penalty of perjury is competent evidence, and Plaintiff cannot answer it with an adjective.

Once the movant proffers evidence, the complaint's allegations lose their presumption of correctness and the plaintiff must come forward with "competent proof." *Apex Digital*, 572 F.3d at 443–44. Plaintiffs' Complaint is merely signed by counsel, not verified by a client, and the legal arguments in their response brief are not evidence either.

Nevertheless, to put this issue to rest, Ms. Gong has provided additional documentary evidence obtained from a U.S. government agency to demonstrate her citizenship status. *See* Ex. A (filed separately under seal).

Because Ms. Gong is a foreign individual, and because Plaintiff Shenzhen Zhengmi Technology Co., Ltd. is likewise a foreign party, there are foreign parties on both sides of this suit and a United States citizen on only one side. Diversity jurisdiction does not exist in such a case. *See Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 361 F.3d 359, 361 (7th Cir. 2004); *accord Dexia Crédit Local v. Rogan*, 629 F.3d 612, 618 (7th Cir. 2010); *Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871, 875 (7th Cir. 2004).

**2. Plaintiffs' request for jurisdictional discovery is untimely, procedurally improper, and unsupported.**

Plaintiffs ask, in the alternative, for "limited, targeted jurisdictional discovery (e.g., a request for documents confirming Ms. Gong's current immigration status)." Dkt. 16 at p. 6. The request should be denied for multiple reasons.

First and foremost, Ms. Gong has already provided documentary evidence of her citizenship status, issued by a U.S. government agency, with this reply brief. *See* Ex. A. That evidence obviates any need for discovery on this issue.

Second, Plaintiffs have been aware of Ms. Gong's contention since at least July 14, 2026 and did nothing about it. The parties' Amended Joint Initial Status Report unequivocally stated Ms. Gong's position: "Diversity is evaluated based on citizenship, not residency. Ms. Gong is a citizen of the People's Republic of China. Thus, there is no complete diversity among the parties." Dkt. 11 at p. 2. Plaintiffs cannot claim surprise.

Third, Plaintiffs failed to take up the opportunity when this Court raised the issue directly. At the July 21, 2026 telephonic initial status hearing, the Court specifically asked whether

jurisdictional discovery would be needed before the anticipated motion was briefed, and Plaintiffs answered that it would not. The Court then set a briefing schedule *and stayed discovery*. Dkt. 14.

Fourth, the request is not properly before the Court. A request for a court order must be made by motion that states "with particularity the grounds for seeking the order" and "the relief sought." Fed. R. Civ. P. 7(b)(1). Plaintiffs filed no such motion. Between the July 21 hearing and their August 25 Response, they served nothing and asked Ms. Gong for nothing. Even now, they identify no document request, interrogatory, or deposition they would pursue. Neither Ms. Gong nor the Court can test whether the discovery Plaintiffs describe as "limited" and "targeted" is either, and the burden of making that showing rests on Plaintiffs.

Lastly, Plaintiffs' request rests on speculation. Their theory is that Ms. Gong has an "incentive" to say what she said. Dkt. 16 at pp. 5–6. But Plaintiffs offer no affidavit, no contrary document, and no reason to believe that a lawyer who has sworn under penalty of perjury that she holds no United States citizenship and no lawful permanent residency will produce a U.S. passport or a green card. If that sufficed, jurisdictional discovery would follow automatically from every declaration a movant files.

The heading in Plaintiffs' response also asserts that "Any Residual Defect Is Curable," but the body of their brief never explains how. Such an undeveloped argument is waived. *See Regnier v. Coleman*, 2025 U.S. Dist. LEXIS 267381, *9 (N.D. Ill. 2025)("[P]erfunctory and undeveloped arguments . . . are waived.")(quoting *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021)).

**B. The Amount in Controversy Is Not Satisfied as to Either Plaintiff.**

**1. The $77,860 balance does not measure any claim Plaintiffs actually assert, nor can it be used to satisfy the threshold twice.**

Plaintiffs' lead argument is that the "remaining balance of $77,860" invoiced by Ms. Gong "independently satisfies the jurisdictional amount." Dkt. 16 at p. 6. It does not. The reason is simple:

that balance measures what *Plaintiffs collectively owe Ms. Gong* under the Engagement Letter, not what *Ms. Gong may owe Plaintiffs* on any claim they current assert in this action.

The Complaint contains four counts: legal malpractice (Count I), breach of fiduciary duty (Count II), fraud (Count III), and unjust enrichment (Count IV). *See* Dkt. 1 ¶¶ 29–46. Every count sounds in either tort or quasi-contract. Plaintiffs intentionally plead no count for breach of contract and no count for declaratory judgment. The declaratory relief they now rely on appears only in paragraph (c) of the prayer for relief.

A prayer for relief is a request for a remedy, it does not plead a claim. The Declaratory Judgment Act "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Extinguishing a contractual obligation is not among the remedies available for professional negligence, breach of fiduciary duty, fraud, or unjust enrichment, and Plaintiffs cite no case holding otherwise.

*Hunt* cited by Plaintiffs does not fill the gap. Dkt. 16 at p. 6. *Hunt* measures the value of the object of the litigation in a declaratory judgment action seeking declaratory and injunctive reliefs. *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347-48 (1977). It therefore does not answer the antecedent question here: whether a request appearing only in the prayer for relief makes the invoice's enforceability an object of the litigation when no count seeks declaratory relief and Ms. Gong has not sued to collect the invoice.

Plaintiffs also ignore the posture. They have not paid the $77,860 and do not allege they ever will. Rather, their own pleading is that they paid Ms. Gong "a total of $35,000.00 in flat fees." Dkt. 1 at ¶ 44. And if the enforceability of that invoice is genuinely the object of this suit, Plaintiffs have made Ms. Gong's alternative point for her, namely that a dispute over what is owed under

the Engagement Letter is the paradigm of a dispute "arising out of this engagement" that Section 8 commits to mediation and arbitration.

Even taken at face value, the $77,860 amount fails because the jurisdictional threshold must be satisfied *by each Plaintiff separately*. "[T]he separate claims of multiple plaintiffs against a single defendant cannot be aggregated," and the court "must look to the individual plaintiffs' claims to determine whether they exceed $75,000." *McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009).

Plaintiffs' own framing defeats them. They describe the invoice as "a single, discrete obligation Ms. Gong has asserted against Plaintiffs collectively." Dkt. 16 at pp. 6–7. Two separate corporations cannot each count the same $77,860 as their own amount in controversy. Plaintiffs make no attempt to allocate the sum between them, offer no evidence of what either entity paid or would owe, and advance no theory under which each may claim the whole. Any such theory is forfeited. *White*, 8 F.4th at 552 ("[P]erfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.").

**2. The "case-within-a-case" theory is unsupported by competent proof and refuted by the record.**

Plaintiffs' fallback position is that Illinois's case-within-a-case doctrine measures damages by what they purportedly lost in the Patent Litigation. Dkt. 16 at p. 7 (citing *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 225-26 (2006)). Ms. Gong does not quarrel with the doctrine. The problem is proof.

Once the amount in controversy is factually challenged, Plaintiffs must support it with "competent proof" by a preponderance of the evidence. *McMillian*, 567 F.3d at 844; *see also Bennett v. Robinhood Fin. LLC*, No. 24-CV-03829, 2025 U.S. Dist. LEXIS 63183, *5 (N.D. Ill.

Apr. 2, 2025). Plaintiffs offer only the same allegations the Motion challenged; no valuation, no expert, no settlement history, no computation, and no declaration.

In any event, the undisputed record affirmatively refutes Plaintiffs' theory. Judge Kness *granted* the temporary restraining order Ms. Gong moved for and entered a fourteen-day TRO. Dkt. 13-1 at ¶¶ 38–39. The TRO was later dissolved on an emergency motion that was briefed and argued by Troutman Pepper lawyers *after* Plaintiffs engaged them to replace Ms. Gong. *Id.* at ¶¶ 42–53. Represented by Troutman Pepper and by their own independent counsel Mr. CHE, Plaintiffs then told Judge Kness in a joint filing with the appearing defendants that they "do not intend to file a motion for preliminary injunction at this time," and they never filed one. *Id.* at ¶¶ 55–56. And they ultimately obtained default judgment of $60,000 against each of sixty-nine non-appearing defendants. *Id.* at ¶ 59. Plaintiffs dispute none of this.

A litigant who obtained the relief its former counsel sought, *made a considered choice through new counsel not to seek more*, and recovered a multi-million-dollar judgment cannot manufacture jurisdiction out of the "settlement leverage" it says it might have had.

Plaintiffs' treatment of their GLORYFIRE allegations is telling. Rather than defend them, Plaintiffs ask this Court to "deem[]" irrelevant "the question as to whether GLORYFIRE was dismissed or whether they were not included in the complaint." Dkt. 16 at p. 8. But that question is the entire premise of the conflict-of-interest damages they pleaded. The Complaint alleges that the undisclosed conflict "directly caused Plaintiffs harm in the form of the *forced dismissal* of Gloryfire—a defendant against whom Plaintiffs had meritorious claims—from the Patent Litigation." Dkt. 1 at ¶ 14 (emphasis added). A third-party store that was never named as a defendant could not have been forced out of the case, and Plaintiffs' successor counsel never sought to add it as a party or to sue it separately.

**3. Section 2-1115 bars punitive damages on every count, including Count III, and punitive damages barred as a matter of law cannot supply the jurisdictional amount.**

**a. Plaintiffs' "post-termination" premise is contradicted by their own pleading.**

Plaintiffs concede that 735 ILCS 5/2-1115 bars punitive damages for claims arising out of the provision of legal services and argue only that Count III escapes the statute. Dkt. 16 at p. 8. It does not. The statute reaches "all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal … malpractice." 735 ILCS 5/2-1115. And it is "broad enough to encompass any acts arising out of the provision of legal services." *Safeway Ins. Co. v. Spinak*, 267 Ill. App. 3d 513, 518 (1st Dist. 1994).

Plaintiffs' argument depends entirely on the assertion that the invoice "occurred in July 2024, *after* the attorney-client relationship had already been terminated," and was therefore "post-termination conduct" rather than "conduct in the course of rendering legal services." Dkt. 16 at p. 8. The premise is false based on the undisputed record.

The Invoice is dated July 5, 2024. Dkt. 1 at ¶ 24; Dkt. 1-2 at 1. Ms. Gong moved to withdraw on July 7, 2024, and Judge Kness did not grant that motion until July 10, 2024. Dkt. 13-1 at ¶ 47. Ms. Gong was still counsel of record for Plaintiffs in the Patent Litigation when the invoice issued. Even on Plaintiffs' own chronology, then, the invoice was rendered during the representation.

The point is not merely temporal. The billing at issue covers services performed between March and July 2024 in the course of Ms. Gong's representation. Dkt. 1-2. A bill does not cease to "arise out of" the provision of legal services because it is rendered at the end of an engagement rather than in the middle of one.

Further, the conduct underlying Count III is the preparation and delivery of an invoice for legal services. Every entry Plaintiffs attack describes legal work: pre-suit investigation, complaint drafting, TRO motion, preliminary injunction research, preparation of the infringement exhibit, and correspondence with co-counsel. *See* Dkt. 1 at ¶¶ 26, 40. Plaintiffs' theory is that Ms. Gong billed too much for legal services and described that legal work inaccurately. A claim cannot be more closely tethered to "the provision of legal services" than a claim about the bill for those services.

Plaintiffs' own authorities say so. *Seber* holds that a plaintiff "could not circumvent this statutory bar against punitive damages by recasting his claim as one for fraud or willful and wanton conduct." *Seber v. Unger*, 881 F. Supp. 323, 329 (N.D. Ill. 1995). *Parus Holdings* applies the statute based on "the nature of the behavior alleged," not the label affixed to the count. *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1005–06 (N.D. Ill. 2008). Plaintiffs quote those cases and then do precisely what both cases forbid.

**b. Punitive damages barred as a matter of law cannot supply the jurisdictional amount.**

Plaintiffs further argue that even if 735 ILCS 5/2-1115 bars punitive damages entirely, "that determination would not affect the jurisdictional analysis" because "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." Dkt. 16 at p. 9 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938)).

A statute enacted decades before this suit was filed is not a subsequent event. The real pertinent holding in *St. Paul Mercury* is the one Ms. Gong invokes, namely that dismissal is required where "it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury*, 303 U.S. at 289. Damages that Illinois law categorically

forbids satisfy that standard, and courts scrutinize punitive-damages allegations closely where they are what carries a case over the threshold. *See Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978-79 (7th Cir. 2000).

**c. Plaintiffs failed to respond to the argument that Counts II through IV are duplicative of Count I.**

Ms. Gong's Motion argued that Counts II, III, and IV are duplicative of Count I because all of Plaintiffs' allegations arise from the same representation and the same alleged injuries. Dkt. 13 at pp. 7–8. Plaintiffs' Response does not address that argument at all. It is therefore conceded. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)("Failure to respond to an argument … results in waiver.").

## C. The Arbitration Clause Is Enforceable And The *Dick-Ipsen* Decision Is Easily Distinguishable.

### 1. *Dick-Ipsen* rested on facts that are the opposite of this record.

Plaintiffs describe *Dick-Ipsen* as though it announced a *per se* rule that an attorney-client arbitration clause is unenforceable unless the lawyer separately explains it to the client orally. It did not. *See Dick-Ipsen v. Humphrey, Farrington & McClain, P.C.*, 2024 IL App (1st) 241043, P29 (Ill. App. Ct. 1st Div. 2024)("[W]e are not proclaiming any rule to govern the conduct of attorneys, nor are we imposing any type of discipline on defendants for their failure to comply with the Rule. We simply hold that, under the totality of the circumstances in this case, the arbitration provision is not enforceable against plaintiff.").

Rather, the Illinois appellate court applied the ordinary *Kinkel* standard, i.e., whether "a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Id.* at P26 (quoting *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 22 (Ill. 2006)). The court then held that *the particular provision before it* was procedurally unconscionable on *the particular record* before it. *Id.* at P29.

The "totality of the circumstances" in *Dick-Ipsen* differ significantly from the record here. The client in *Dick-Ipsen*, a disabled dry cleaner suffering from "a progressive neurological illness," was "an individual client who has not been shown to have any sophistication with regard to legal matters." *Id.* at P28, P39. No independent counsel represented him when he signed the retainer agreement. The arbitration clause said nothing about what arbitration meant and required him to travel roughly five hundred miles from Illinois to Missouri to attend any arbitration even though his driver's license had been taken away due to his Parkinson's diagnosis. *Id.* at P7, P11. And, critically, he submitted an affidavit supplying "specific, uncontradicted evidence that plaintiff did not understand the arbitration agreement and did not understand its implications," which the defendant law firm made no attempt to rebut. *Id.* at P11, P24. The court also noted, in distinguishing contrary authority, that "[p]laintiff did not ever try to invoke the arbitration provision." *Id.* at P24.

### 2. Section 8 makes, in writing, the very disclosures *Dick-Ipsen* found missing.

The arbitration clause in *Dick-Ipsen* was three sentences long and disclosed nothing but the forum. *Id.* at P7. By contrast, Section 8 of the Engagement Letter here reads:

> We each acknowledge, understand, and agree that resolution of disputes through final, binding arbitration has certain advantages and disadvantages when compared with resolution of disputes in a court of law. Resolution of disputes through arbitration may be faster, less expensive, less burdensome and more private than resolution of disputes in court. On the other hand, resolution of disputes through final, binding arbitration may deprive both parties of the formal rights of discovery, the right to a trial by jury, and the right to an appeal. Understanding these advantages and disadvantages, we each agree that any disputes arising out of this engagement, other than disciplinary disputes, shall be resolved solely by arbitration.

Dkt. 1-1 at p. 4. The provision goes on to identify the administering body (the American Arbitration Association), the seat (Chicago, Illinois, the same district in which Plaintiffs chose to file this action), the method of selecting the arbitrator (jointly, from among attorneys competent in

the subject matter), the governing substantive law (Illinois), the finality of the award, the allocation of fees and costs, and the requirement of good-faith mediation before any arbitration. *Id.*

Plaintiffs contend that the client must be warned about "the client's forfeiture of the right to a jury trial, the right to appeal, and the ordinary discovery process available in litigation." Dkt. 16 at pp. 2–3. Section 8 warns of each of those three things, by name, in the very provision the parties signed. Dkt. 1-1 at p. 4. In short, Section 8 does exactly what the Illinois Rule of Professional Conduct 1.8 cmt. 14 requires, fully informing Plaintiffs of the scope and effect of the arbitration provision.

Nor is the clause buried. It appears under a bolded heading, "Applicable Law and Arbitration," as one of twelve numbered sections in a five-page letter, in the same typeface as the rest. Dkt. 1-1 at p. 4. Under *Kinkel*, nothing about it is "difficult to find, read, or understand." Plaintiffs' position reduces to a rule that a written disclosure never counts unless also delivered orally. *Dick-Ipsen* holds no such thing; it holds that a client cannot be bound to terms about which he was told nothing at all.

**3. Plaintiffs are sophisticated commercial parties whose own independent counsel reviewed the Engagement Letter before they signed it.**

The undisputed record establishes the following, none of which Plaintiffs contest:

Mr. Ziyang BAO—the CEO of Plaintiff Zhengmi—"negotiated and finalized the exact terms of the Engagement Letter on behalf of both Plaintiffs" and was "the one in charge of both Plaintiffs' communications" with Ms. Gong. Dkt. 13-1 at ¶¶ 21–22. Mr. Shaoyi CHE, a licensed Texas attorney, was Plaintiffs' own independent counsel throughout. Mr. CHE has a pre-existing relationship with Plaintiffs and introduced Plaintiffs to Ms. Gong. Dkt. 13-1 at ¶¶ 16, 22. His firm co-signed the Engagement Letter with Plaintiffs. Dkt. 1-1 at p. 5. Mr. CHE acted as the conduit for substantially all communications between Plaintiffs and Ms. Gong. Dkt. 13-1 at ¶ 20-22. He

appeared *pro hac vice* as co-lead counsel and continued to represent Plaintiffs after Ms. Gong withdrew, through final judgment.

Most directly to the point, the finalized Engagement Letter was sent via DocuSign to Mr. BAO's email address at Mr. CHE's explicit instruction. *Id.* at ¶ 23. The same DocuSign request also went to Mr. CHE because his firm is a co-signer with Plaintiffs. Dkt. 1-1 at p. 5. As shown on the signature page of the Engagement Letter, Mr. CHE signed first on February 25, 2024. *Id.* Mr. Mingjie WANG's signature was affixed (by Mr. BAO) the next day on February 26, 2024. *Id.*; Dkt. 13-1 at ¶¶ 23-24. Plaintiffs' argument therefore asks this Court to find that no one ever explained Section 8 to them, while their own independent counsel Mr. CHE reviewed and agreed to that provision and instructed Ms. Gong to send the Engagement Letter to Mr. BAO.

In contrast, the *Dick-Ipsen* plaintiff had no one to ask. Here, Plaintiffs had an independent counsel who reviewed the instrument, co-signed it, and bore responsibility under it. *Dick-Ipsen* framed its holding around the client's lack of sophistication and the "disparity in sophistication between the parties." *Dick-Ipsen*, 2024 IL App (1st) 241043 at P29. No such disparity exists between Ms. Gong on one side and two operating companies, their corporate representative Mr. BAO, and their independent counsel Mr. CHE on the other.

As sophisticated commercial parties advised by their own counsel, Plaintiffs are "charged with knowledge of and assent to the agreement signed." *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 150 (Ill. 2006).

**4. Plaintiffs offered no evidence that they did not understand Section 8.**

Plaintiffs' argument is not that anyone was confused, but merely that "Ms. Gong's own declaration says nothing about ever explaining the arbitration clause." Dkt. 16 at pp. 3, 11. That is an argument about what Ms. Gong's declaration does not say. But the question is not whether her declaration anticipated every point Plaintiffs would later raise; it is whether Plaintiffs have come

forward with evidence that they did not understand what they signed. Silence in a declaration directed to other subjects is not that evidence, and it does not relieve Plaintiffs of a burden that is theirs to carry.

The burden of identifying a triable issue as to the formation or enforceability of an arbitration agreement rests on the party resisting arbitration. *Tinder*, 305 F.3d at 735. It is akin to that of a party opposing summary judgment. *Id.* Namely, the opponent therefore "must identify specific evidence in the record demonstrating a material factual dispute for trial" and "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests." *Id.* Plaintiffs identified no evidence.

To the extent *Dick-Ipsen* places a burden on the attorney to show the agreement was "fair, reasonable, and fully known and understood," that burden is discharged here by the instrument itself, which recites the material terms and their consequences, and by the undisputed circumstances of its negotiation and execution. In *Dick-Ipsen*, the law firm presented no evidence to contradict plaintiff's affidavit. Here the posture is reversed: Ms. Gong presented a declaration under the penalty of perjury, and Plaintiffs offered no contrary evidence.

**5. Plaintiffs themselves attempted to invoke the arbitration clause when it suited them.**

Finally, and unlike the plaintiff in *Dick-Ipsen*, Plaintiffs have already sought the benefit of Section 8. Specifically, on December 3, 2024, Judge Kness held an in-person hearing in the Patent Litigation to hear oral arguments regarding Plaintiffs' motion to strike an attorney's lien placed by Ms. Gong's firm. *See* Dkt. 13-2 at p. 25 (ECF 90 dated December 3, 2024). During that hearing,

Plaintiffs, through their current counsel Mr. Nitschke, made a belated attempt to invoke the arbitration clause orally.[1]

The *Dick-Ipsen* court expressly relied on the opposite fact in distinguishing contrary authority, observing that the "[p]laintiff did not ever try to invoke the arbitration provision." *Dick-Ipsen*, 2024 IL App (1st) 241043 at P23-24. Having demanded arbitration under Section 8 when it served their interests in the underlying proceeding, Plaintiffs cannot now maintain that they never understood the existence or implications of that very provision.

## III. CONCLUSION

For the foregoing reasons and those stated in the Motion, Ms. Gong respectfully requests that this Court dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1). In the alternative, Ms. Gong respectfully requests that the Court compel Plaintiffs to submit their claims to mandatory mediation and binding arbitration under Section 8 of the Engagement Letter and stay this action pending that proceeding.

Dated: September 8, 2026

Respectfully submitted,

*/s/ Sen Wang*
Sen Wang
Illinois Bar No. 6324817
THC Lawyers P.C.
211 W. Wacker Drive Ste 120 (Pmb 2019)
Chicago, IL 60606
Email: awang@thclawyers.com
Phone: 312-725-0886

*Counsel for Ms. Zheng Gong*

[1] The undersigned counsel also represented Ms. Gong's firm in the lien proceeding in front of Judge Kness and attended the said December 3, 2024 hearing in person.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 8, 2026, a true and correct copy of the foregoing paper was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Date: September 8, 2026 *<u>/s/ Sen Wang</u>*